*W. E. Steed* and *C. W. Foy,* for plaintiff in error.

---

## PRUDENTIAL INVESTMENT AND DEVELOPMENT COMPANY *v.* HILTON.

1. Where a testator by his will bequeathed and devised all of his estate, real and personal, to his wife (who was his sole heir) for life, giving her "full power and right to sell and dispose of, use and appropriate the same, or any part thereof, to her own use and benefit, as fully as she could do if she were the sole and unconditional owner thereof, excepting only the right of disposal by her last will and testament;" and where the wife, who was seventy years of age, in bad health and bedridden, conveyed by quitclaim deed certain realty devised by the will to another for a full and fair consideration, signing the deed individually and as executrix of the will, and reciting in the deed that the land conveyed passed to her by virtue of the provisions of the will of testator; and where the widow's vendee sold to another, who executed a contract in writing to the plaintiff in error, agreeing to execute to him titles to the property in controversy, that "are to be

fee-simple and warranty; . . titles are to be good and marketable," the trial judge, to whom was submitted the case made by the petition for specific performance and the answer thereto, without the intervention of a jury, did not err in requiring, by appropriate decree, the specific performance of the contract.

2. The quitclaim deed from the widow to her vendee reciting the will and a fair consideration from the vendee, and the deed being signed by the widow both individually and " as executrix " of the will of the testator, was the exercise of the power conferred by the will, and operated to convey a fee-simple title to the widow's vendee.

No. 2775. MAY 15, 1922.

Specific performance. Before Judge Meldrim. Chatham superior court. July 29, 1921.

Thomas Hilton brought a petition for specific performance against the Prudential Investment and Development Company, a corporation of Chatham County, to compel specific performance of a written contract for the sale of certain real estate in Savannah. The case was tried by agreement by the trial judge upon the petition and answer, without the intervention of a jury. The allegations of the petition were all admitted, except one; and that one was the contention of the plaintiff that the title involved in the case was " good and marketable." The following facts alleged in the petition are admitted: Joseph P. Gilson died in January, 1913, leaving a will which was duly probated in the court of ordinary of Chatham County, on March 3, 1913. Testator's widow and executrix, Lucinia Weeks Gilson, administered the estate, and was regularly discharged on July 6, 1914. The widow was the sole heir at law of her husband, as there were no children or representatives of children. Joseph P. Gilson died seized and possessed of the property in controversy. A copy of the will of Joseph P. Gilson was attached to the petition. By the second item of his will the testator devises and bequeaths to his wife, Lucinia Weeks Gilson, all of his estate and property, real, personal, and mixed, of every name, kind, and nature and wheresoever situated, " to have and to hold the same for and during her natural life; giving, devising, and bequeathing unto her full power and right to sell and dispose of, use, and appropriate the same, or any part thereof, to her own use and benefit, as fully as she could do if she were the sole and unconditional owner thereof, excepting only the right of disposal by her last will and testament." The third item provides: " If upon the death of my said wife any part or portion of my said

estate and property remains undisposed of by her, then and in that case I give, devise, and bequeath " certain specific legacies to his coachman, cook, and to certain nephews and nieces. By deed dated July 18, 1913, Mrs. Gilson, the widow, individually and " as executrix of the last will and testament of Joseph P: Gilson, deceased," conveyed the property in controversy to Joseph Hilton of Nyack, New York. This deed is in consideration of $10,000, without warranty, to the party of the second part, " his heirs and assigns forever." The deed was duly executed, and was recorded July 28, 1913. The deed recites that Mrs. Gilson is the widow of Joseph P. Gilson, and that he died a resident of the State of Georgia, seized and possessed of the premises, and that the same passed to her " by virtue of the provisions of the last will and testament of said· Joseph P. Gilson," etc. The deed also has the following clause: " It being the intention and purpose of this instrument to convey to and vest in the said party of the second part all the right, title, and interest of the party of the first part in and to the premises and appurtenances herein above described." The answer further admits that the consideration paid by Joseph· Hilton was a full and fair consideration for a conveyance in fee of the property; and that on June 20, 1913, the appraisers appointed by the ordinary of Chatham County, to appraise the estate of Joseph P. Gilson, appraised this property at $10,000; and in her verified return filed October 23, 1913, the executrix charged her-. self with the said property at this valuation, and credited it to the estate at this valuation. At the time of the execution of the· deed Lucinia Weeks Gilson was, to the knowledge of Joseph Hilton, seventy years of age, bedridden, in a very precarious state of health, had been bedridden for years, and seemingly had the· prospect of a very short tenure of life. She departed· this life on December 14, 1916. It is also admitted that the plaintiff offered to convey the property to the defendant and to deliver. a warranty deed conveying the same, but the defendant refused to accept the deed or take possession of the property, contending that the deed from Mrs. Gilson conveyed only a life-estate and· that therefore the title is not. " good and marketable." Under the contract of sale between Thomas Hilton, who was the vendee of Joseph Hilton, and the Prudential Investment & Development Co:, executed May 21, 1921, the " titles are to be fee-simple and warranty; . .

27

titles are to be good and marketable." The trial judge decreed that the title of the plaintiff, Thomas Hilton, to the property described in the petition for specific performance is " good and marketable;" and that the deed of Lucinia Weeks Gilson, executed individually and as executrix of the will of Joseph P. Gilson, to Joseph Hilton, conveyed a fee-simple estate in the property described in the deed; and that the defendant in error was entitled to specific performance of the contract. To this decree the plaintiff in error excepted.

*T. P. Ravenel,* for plaintiff in error. *Adams & Adams,* contra.

HILL, J. (After stating the foregoing facts.)

The single question in the case is whether the fee-simple title sought to be sold by Thomas Hilton to the Prudential Investment & Development Co. is " good and marketable." If it is good, the court below was right in decreeing specific performance. The deed of Mrs. Gilson purported to convey " all the right, title, and interest of the party of the first part in and to the premises and appurtenances herein above described." It is contended by the plaintiff in error that under this language in the deed it conveyed a life-estate only. But it must be remembered that under the will Mrs. Gilson had the " full power and right to sell and dispose of, use and appropriate the same, or any part thereof, to her own use and benefit, as fully as she could do if she were the sole and unconditional owner thereof, excepting only the right of disposal by her last will and testament." This language is broad enough to confer upon Mrs. Gilson the power to sell and execute the fee-simple title to the property. The case of *Stark* v. *Chambers,* 140 *Ga.* 601 (79 S. E. 535), is in point. There the testator bequeathed and devised to his wife all of his estate, real and personal, " for her support and control during her lifetime." After the death of his wife the testator provided that he " wanted " what property was left, real or personal or both, divided and sold and the money equally divided among his children, after paying his stepson $100; and by the fourth item of his will the testator devised as follows: " I direct and will that after my death that my said wife, Vina Moats, take charge of all the property mentioned in this my last will and testament, without any appraisement, and use it as she needs for her comfort and support." It was held: " The will conferred upon the widow of the testator, during her life, power to convey in fee any part of the estate, where necessary for her support; and

where in order to obtain a support she sold the land for its reasonable value, and executed to the purchaser a deed conveying the land in fee simple under such 'power, the purchaser was not subject to be evicted after her death by the testator's administrator de bonis non cum testamento annexo."

The only restriction in the will under consideration as to the power of alienation is the right of disposal by her last will and testament. Otherwise Mrs. Gilson was given the full power and right to sell and dispose of the property in controversy, " as fully as she could do if she were the sole and unconditional owner thereof." If the language in the will construed in the *Stark* case authorized the conveyance in fee, certainly the language contained in the will under review would confer that power. The testators in both cases first devised life-estates, but with power to convey. The power in the instant case was exercised by the wife, and we think that it was sufficient to authorize her to convey the fee. The consideration certainly was ample, as showing that both the seller and the purchaser contemplated that the fee, and not merely the life-estate, was to be conveyed; for the undisputed evidence is that at the time of the execution of the deed Mrs. Gilson was seventy years of age, was bedridden and had been for years; and assuming that both the seller and buyer acted in good faith (and no question as to that is raised in the record), surely no purchaser would give $10,000 for the property in controversy if he were buying merely a life-estate of one who is shown to be of the age and in the state of health that Mrs. Gilson was. Indeed it is admitted that $10,000 is a fair valuation of the property in controversy. It appears, therefore, that Mrs. Gilson received full value for the land; and while she conveyed by quitclaim deed, yet where from the whole deed, including the consideration, it appears that she 'was conveying all that she had a right to convey, we are of the opinion that under the power contained in the will she had the right to convey, and that in the deed she did convey, a fee-simple title to the land in controversy. Every conveyance, properly executed, shall be construed to convey the fee, unless a less estate is mentioned and limited in such conveyance. Civil Code (1910), § 3659; and see *Mahoney* v. *Manning*, 133 *Ga.* 784 (66 S. E. 1082); *Nort* v. *Healy Real Estate &c. Co.*, 136 *Ga.* 293 (71 S. E. 471). In the *Mahoney* case, Mr. Justice Evans in discussing the case of *Holder* v.

*American Investment Co.,* 94 *Ga.* 640 (21 S. E. 897), where it was held that the conveyance in that case was effective to pass the owner's one-half undivided interest, together with her life-estate, *but no more,* said: " It will be observed that the court took pains to state that the conveyance made no mention of the will, or that the maker was executrix, and made no reference whatever to any power of sale derived from the will. In other words, there was nothing in the instrument to unequivocally disclose that it was intended as an execution of a power." In the instant case the vendor does mention the will, and also the fact that the maker was executrix under the will. If she had intended not to execute the power contained in the will, but was merely conveying her life-interest under the will, there would have been no necessity for mentioning either the will or that she was executrix. But she did both, thus clearly indicating that she was not only conveying her individual interest, but was exercising the power contained in the will to convey the fee. Mr Justice Evans in the case just referred to further said, after citing a number of cases where no reference was made to the power, and where it was held that the power was not exercised: " We take these cases to mean, if there had been a reference to the conveyance conferring a power, that such reference would evince an intention to execute the power, and would be so construed. So that we conceive the rule of law, as expressed in these cases, to be, that in order for an instrument to be effective as an execution of a power, where the maker is the owner of an interest in the land conveyed, and also of a power to convey the fee, the recitals in the instrument must either expressly refer to the power, or by necessary implication clearly indicate that an execution of the power is intended." As stated above, we are of the opinion that where the maker of the deed has both referred to the will containing the power to dispose of the fee and also to herself. as executrix under the will,. the necessary implication is that she intended to execute the power, and consequently to convey the fee.

From the foregoing we conclude that the trial judge rightly held that the maker of the deed intended to execute the power conferred in the will of her husband; and in entering a decree for specific performance as set out therein.

*Judgment affirmed. All the Justices concur.*